Miller J.
i. judicial Smty for/udieiai acts. The defendant was a justice of the peace of Grundy county; as such he issued a warrant, based upon an information, for the arrest of the plaintiff for the offense of willful trespass. This warraiLt was ¿irecte¿ to and placed in the hands of the sheriff of Grundy county, who caused it to be placed in the hands of the deputy sheriff of Black Hawk county, who, without the certificate of the clerk of Grundy county indorsed thereon, as prescribed in section 4538 of .the Revision, arrested the plaintiff in Black Hawk county and took him before the defendant (the justice). Hpon his appearance before the justice, the plaintiff, then prisoner, asked for and obtained a continuance of the case until the following day. At the time set for the hearing the plaintiff appeared and moved to be discharged from custody, on the ground that he had not been legally arrested, which motion the justice overruled. On the trial it appeared that the property injured was of less value than $50., The justice, however, instead of rendering final judgment, assessing a fine or ordering an imprisonment of the prisoner, made an order holding him to answer at the next term of the district court, and that he should enter into a recognizance for that purpose, which the prisoner failing to do, the justice issued a warrant committing him to the jail of Grundy county, directed to the sheriff of the county. The sheriff took plaintiff into his custody by virtue of this warrant, and there being no jail in Grundy county, confined him in the jail of Black Hawk county, where he remained for a few days, and then was discharged on habeas corpus, it is not claimed by appellant that the defendant acted corruptly or maliciously. No averment to this effect is made in the petition.
I. It is well settled on all the authorities, both English and American, that no action will lie against a judge of a court of record for any thing done by him in the exercise of his judicial functions. 2 Hill, on Torts, ch. 28, p. 171. *502 The leading American cases are Pratt v. Gardner, 2 Cush. 68, and Yates v. Lansing, 5 Johns. 282, and 9 id. 395.
In the first, Chief Justice Shaw says: “ It is a principle lying at the foundation of all well-ordered jurisprudence, that every judge, whether of a higher or lower court, exercising the jurisdiction vested in him by law, and deciding upon the rights of others, should act upon his own free, unbiased convictions, uninfluenced by any apprehension of consequences,” etc. “ He is not bound at the peril of an action for damages, or of a personal controversy, to decide right in matter either of law or fact; but to decide according to his own convictions of right, of which his recorded judgment is the test, and must be taken to be conclusive evidence. Such, of necessity, is the nature of the trust assumed by all on whom judicial power, in greater or less measure, is conferred. This trust is fulfilled when he honestly decides according to the conclusions of his own mind in a given case, although there may be great conflict of evidence, great doubts of the law, and when another mind might honestly come to a different conclusion. But in a controverted case, however slight may be the preponderance in one scale, it must lead to a decision as conclusive as if the weight were all in that scale. Now it is manifest that to every controversy there are two sides, and that a decision in favor of one must be against the other. And this may extend to every interest which men hold most dear; to property, reputation and liberty, civil and social; to political and religious privileges; to all that makes life desirable, and to life itself. If an action might be brought against the judge by a party feeling himself aggrieved, the judge would be compelled to put in issue facts in which he has no interest, and the case must be tried before some other judge, who, in his turn, might be held amenable to the losing party, and so on indefinitely. The general principle which exempts judges from answering in a private action, as for a tort, for any judgment, *503 given in the due course of the administration of justice, seems to be too well settled to require discussion.”
And the Chief Justice further said: “ These rules extend as well to justices of the peace as to any other judicial officer acting within his jurisdiction, in a judicial matter.”
Chief Justice Kent, in Yates v. Lansing, supra, says: “ The doctrine which holds a judge exempt from a civil suit or indictment for any act done, or omitted to be done, by him, as a judge, has a deep root in the common law. It is to be found in the earliest judicial records, and it has been steadily maintained by an undjsturbed current of decisions in the English courts, amidst every change of policy, and through every revolution of their government.” And after an extended review of the English and American cases on the subject, he further says: “No man can foresee the disastrous consequences of a precedent in favor of such an action. Whenever we subject the established courts of the land to the degradation of private prosecutions, we subdue their independence and destroy their authority. Instead of being venerable before the public they become contemptible, and we thereby embolden the licentious to trample upon every thing sacred in society, and to overturn those institutions which have hitherto been deemed the best guardians of civil liberty.”
In the case of Wasson v. Mitchell et al., 18 Iowa, 153, 155, Mr. Justice Dillon says: “As to the general rules of the law, there is no great dispute. Thus, a judicial officer is not liable, civilly, for judicial acts, unless it .may be (a point on which the authorities are not in accord) where he acts willfully, maliciously or corruptly.” And he cites a long list of cases, including the leading ones before referred to, in support of the general rule. It may be observed that while the views expressed in Wasson v. Mitchell, supra, accord with the whole current of authority, holding that a civil action will not lie against a judicial officer for *504 any act done by him in the discharge of his judicial functions, it does not hold that he would be liable for such acts done corruptly or maliciously. The language used by the learned judge recognizes the fact that the authorities are not in accord on that point, and no opinion is expressed further than, that “ a judicial officer is not liable civilly for judicial acts, unless it may be where he acts willfully, ma liciously or corruptly, leaving that point undecided.”
It was unnecessary for the court, in that case, to determine whether a judicial officer would thus be liable where he acted corruptly or maliciously, and the. point therefore was not passed upon. So in this case it is not necessary for us to pass upon that point, hence we refrain from a determination of it, merely quoting what is said by Mr. Chief Justice Shaw in Pratt v. Gardner, supra. He says: “ If it be said, that it may be conceded that the action will not lie unless in a case where a judge has acted partially or corruptly, the answer is, that the losing party may always aver that the judge has acted partially or corruptly, and may offer testimony of bystanders or others to prove it; and these proofs are addressed to the court and jury before whom the judge is called to defend himself, and the result is made to depend, not on his own original conviction, the conclusion of his own mind, in the decision of the original case, as by the theory of jurisprudence it ought to do, but upon the conclusion of other minds under the influence of other and different considerations.”
The case, of Wasson v. Mitchell, supra, also holds that the rule extends to judicial officers of inferior as well as those of superior courts. This is in accord with the current of the modern anthorities. See State v. Hartwell, 35 Me. 129; Lane v. Crosby, 42 id. 327; Willey v. Strickland, 8 Ind. 453; Mooney v. Williams, 15 Miss. 442; Wright v. Hazen, 25 Vt. 143. See, also, cases cited by Mr. Justice Dillon, in Wasson v. Mitchell, supra. See, *505 also, Clark v. Spicer, recently decided by tbe supreme court of Kansas, December term, 1870, West. Jur., Jan., 1871, p. 35.
It is contended, in the first place, tbat, inasmuch as tbe arrest of tbe plaintiff in Black Hawk county was illegal, therefore tbe justice acquired no jurisdiction over the person of tbe plaintiff.
Tbe evidence shows tbat tbe warrant was regularly and lawfully issued, and tbe officer making tbe arrest did so in Black Hawk county without tbe knowledge or direction of tbe magistrate. Tbe plaintiff was brought before tbe defendant, in tbe county where tbe warrant issued, asked and obtained a continuance until tbe next day, and on tbat day appeared at tbe office of tbe justice, before making any motion or complaint tbat be bad been illegally or irregularly arrested.
Whether tbe plaintiff was legally arrested or not, be was brought before tbe justice under a warrant duly issued against the plaintiff, and tbe justice bad jurisdiction to determine tbe question whether tbe arrest was sufficiently regular to give him jurisdiction to proceed with tbe investigation. This question tbe plaintiff presented, and tbe justice was called upon and bad authority to decide. Whether bis decision was right or wrong is immaterial. It was a judicial decision of a question within tbe general scope of the jurisdiction of tbe justice, for which be is not answerable in a civil action. And having decided tbat tbe plaintiff was legally in court, and being actually present, it was tbe duty of tbe magistrate to proceed with an investigation of tbe case.
Tbe cases cited by appellant in nowise conflict with this view.
II. It is next urged tbat tbe value of tbe property being less than $50, and tbe justice, therefore, having jurisdiction to try and determine tbe cause, exceeded, bis jurisdie *506 tion by committing tbe plaintiff to answer before tbe district court.
The justice had jurisdiction over the subject-matter; and whether he should try the cause himself or commit the accused for trial in the district court, depended entirely on the value of the property taken, as shown by the proof. This determination involved the decision of questions of law and fact. The justice had jurisdiction to try and determine the cause, if the value of the property did not exceed $50. § 1, ch. 28, Laws of 1866. He had jurisdiction to examine and commit for trial before the district court, where the value of the property was greater than that amount. Rev., ch. 195. So that, whatever the value of the property, he had jurisdiction over the subject-matter, his judgment in the premises being subject to be controlled by the value of the property. That he gave an erroneous judgment there can be no question, but it was only an error of judgment for which he is not to be called upon to defend in a civil action against him. Had the evidence before the justice shown the value of the property to be greater than $50, his judgment would have been, in this respect, correct. His judgment, however, was not sustained by sufficient proof. It was, therefore, erroneous, in matter of fact. Or it may be said that upon the facts proved, the judgment was erroneous in point of law.
That the subject-matter was one over which the justice had jurisdiction, there can be no question; the character of his judgment being subject to be varied by the proof of the value of the property taken. For a mistake of judgment, we have seen, he is not answerable in this action.
2^ — officer_ aence. ' III. It is also urged by appellant that the court below erred in admitting evidence that the defendant was an acting justice of the peace; that the best evi. dence of his official character ought to have been produced.
In other words, that evidence that the defendant was a *507 justice of the peace, de facto, was not admissible or sufficient evidence in justification.
The rule is well settled that, where it is shown that one has been acting in the capacity of a public officer, he will be presumed to have been duly appointed to the office until the contrary appears; and it is not material how the question arises, whether in a civil or criminal case, nor whether the, officer is or is not a party to the record. 1 Greenlf. Ev., §§ 83, 92, and notes.
The judgment of the circuit court is
Affirmed.